IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| LAZARO PONCE,<br><br>                Plaintiff,<br><br>v.<br><br>BART MORTENSEN,[1] Former Warden at the Utah State Correctional Facility; CASSIDY ROSS, STG Sargent; BRIAN LUNA, Correctional Officer; CATHIE TRUJILLO, Mail Room Manager; CARLOS PERALTA, Washington County Correctional Deputy; and TREVOR BENSON, Jail Commander of Purgatory Correctional Facility,<br><br>                Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING LEAVE TO AMEND, DENYING MOTIONS FOR EMERGENCY RELIEF, AND DISMISSING TWO DEFENDANTS**<br><br>Case No. 2:24-cv-00273-TC<br><br>Judge Tena Campbell |

    Plaintiff Lazaro Ponce, representing himself pro se, brings this civil rights action under 42 U.S.C. § 1983 against several officials at the Utah State Correctional Facility and Purgatory Correctional Facility. There are currently 20 motions pending before the court, some asking for multiple forms of relief, including two recently filed motions for a temporary restraining order (TRO). (ECF Nos. 66 & 71.) Mr. Ponce has also asked for an evidentiary hearing on one of his

---

[1] The court directs the Clerk of Court to correct the spelling of Mr. Mortensen's last name. Former Warden Mortensen was incorrectly identified as Bart Mortenson in the Complaint. (See ECF No. 4.)

1

TRO motions, for an emergency evidentiary hearing on another matter, and for the court to appoint a special master. (ECF Nos. 67 & 83.)

In his amended complaint, Mr. Ponce cites sleep deprivation and harassment by prison officials, improper destruction of his mail, safety concerns, threats designed to prevent him from filing grievances, and retaliation against him for filing other lawsuits, all in violation of his First and Eighth Amendment rights. (See Am. Compl., ECF No. 17.) He seeks damages, a declaration that these actions violated the Constitution and the laws of the United States, and multiple forms of injunctive relief, including: an order to prevent the warden from removing evidence of these alleged violations; an order to stop harassing Mr. Ponce and depriving him of sleep; an order to stop throwing away his mail; an order to refrain from transferring him to other facilities or out of the country; and an order to place him in protective custody and administrative segregation. (Id. at 25–26.)

Since filing his amended complaint, Mr. Ponce has moved to supplement the pleadings four separate times. (See ECF Nos. 48, 60, 79, 86.[2]) He seeks to add claims related to additional incidents of mail theft, retaliation, physical abuse by prison officials, and an assault that occurred on February 5, 2025, which he describes in a reply supporting one of his motions for a protective order. (See Reply to Mot. Protective Order, ECF No. 65.) This assault by another prisoner motivated one of Mr. Ponce's motions for a TRO (see ECF No. 71), in which Mr. Ponce asks for

---

[2] Although styled as a "Motion to Verified Stay," the court interprets ECF No. 79 as a third motion to file supplemental pleadings, as Mr. Ponce asks for additional time to file pleadings that would include claims related to the events described in the grievance that Mr. Ponce attaches to the motion—namely, the assault discussed below that occurred on February 5, 2025. Mr. Ponce also moves to substitute the current warden of the USCF as a defendant. (ECF No. 80.) Mr. Ponce repeats this request in his latest Motion for Leave to File Supplemental Pleadings. (See ECF No. 86.)

an order "to place plaintiff in administration segregation as a Level-1 inmate in a supermax cell-block…." (Id. at 1.)

In an affidavit supporting that motion (ECF No. 72), Mr. Ponce provides additional context for several of his claims in this action. He suggests that he is a "high profile inmate" because he was involved in an incident that made national headlines: the mass shooting that occurred at a Wal-Mart in El Paso, Texas, on August 3, 2019, in which 23 people were killed. Mr. Ponce avers that he "saved the life of a small baby and helped some of the wounded victims to safety …." (Id. at 1.) His account appears to be corroborated by at least some news sources.[3] He also maintains that he made comments criticizing the shooter for being racist and that those comments circulated in on-line videos and news stories. (Id.) As a result, he claims to have received death threats from white supremacist gangs. (Id.)

## DISCUSSION

Mr. Ponce makes an unusual request for relief in this action, as he asks to be placed under additional security measures and more restrictions. Many of the claims in his Amended Complaint and his proposed supplemental pleadings are unsupported, but at this stage in the litigation—before the government has filed a Martinez report or a motion for summary judgment—the court takes as true the Amended Complaint's well-pled allegations. See Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., 771 F.3d 697, 700 (10th Cir. 2014). Although the news stories related to his involvement with the El Paso incident do not appear to be widely circulated, the court finds it is at least plausible that Mr. Ponce may have been targeted in the aftermath of that event. But in this litigation, Mr. Ponce must demonstrate more than that he was

---

[3] See, e.g., Daniel Borunda, El Paso Police Confirm Lazaro Ponce is El Paso Walmart Shooting Mystery Hero, El Paso Times, Jan. 27, 2020.

targeted by white supremacist gangs or other private actors—he must show that there is a connection between the conduct of specific prison officials and violations of his rights, for instance because those prison officials were deliberately indifferent to an objective risk of serious harm faced by Mr. Ponce. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). The Tenth Circuit has cautioned federal courts to use restraint "in matters involving the administration, control, and maintenance by the sovereign states of their penal systems." Battle v. Anderson, 564 F.2d 388, 392 (10th Cir. 1997). The court therefore reminds Mr. Ponce that it rarely orders injunctive relief against state prison administrators. But despite that high bar, the court will carefully consider Mr. Ponce's claims and has previously determined that his case may move forward. (Order, July 17, 2024, ECF No. 20.)

Nevertheless, the litigation has not yet advanced to a point where the court may consider the merits of Mr. Ponce's claims. Mr. Ponce has filed dozens of documents and motions without allowing adequate time for the Defendants to respond to his previous motions. While the court recognizes Mr. Ponce's interest in alerting the court to potential issues in his case, the court must balance that interest with the Defendants' ability to respond. In addition, it is unclear which claims Mr. Ponce still wishes to pursue, as there has been turnover in prison staff and Mr. Ponce requests leave to add new defendants to the lawsuit.

As explained in more detail below, the court grants Mr. Ponce leave to file a Second Amended Complaint. The litigation is still in early stages, Mr. Ponce's additional claims are related to his original claims, and there are not so many defendants in the action to make the litigation unwieldy. But the court notes that additional time is required to consider Mr. Ponce's new claims. After receiving Mr. Ponce's Second Amended Complaint, the court must then

4

screen that complaint to determine if service of process is warranted on the proposed additional defendants and must allow the named defendants an opportunity to file an answer.

The court finds that Mr. Ponce's remaining motions are either moot or should be denied. Although the court is concerned about the recent assault, the court has carefully considered Mr. Ponce's description of that incident, as well as the material provided by the Defendants, and the court finds insufficient evidence on the current record to justify emergency relief.

**I. TRO Motions (ECF Nos. 66 & 71)**

Mr. Ponce has filed two motions asking the court to grant him a TRO against the Defendants. He seeks an order prohibiting the Defendants from transferring him to another facility—he specifically cites fears about being moved to a prison in El Salvador, a concern that appears to be motivated by news stories about an offer from the El Salvadorean government to house U.S. prisoners[4]—and asks to be placed in administrative segregation after being assaulted by a fellow prisoner on February 5, 2025.

In their response, Defendants Mortensen, Luna, Ross, and Trujillo (collectively, the USCF Defendants) note that they are unaware "of any current plans to transfer Ponce to another correctional facility" and "are not aware of any agreements or plans to transfer Ponce to El Salvador," or otherwise deport him. (Defs.' Resp. to TRO Motions, ECF No. 74 at 4.) They state further that "none of the individually named State Defendants have the authority to approve or prevent the transfer of an inmate" and point out that Warden Mortensen is no longer the warden of USCF. (Id. at 4 & n.10.) In addition, the USCF Defendants have attached the report of an investigation into the February 5, 2025 assault of Mr. Ponce by another inmate that was

---

[4] See, e.g., Philip Marcelo & Marcos Alemán, El Salvador's Offer to Take in US Deportees and Violent Criminals Is Unlike Any Other Migrant Deal, A.P. News, Feb. 4, 2025.

conducted by an investigator from the Law Enforcement Bureau. (ECF No. 77-1.) The USCF Defendants maintain that "USCF staff were not involved in or orchestrated the altercation in any way." (ECF No. 74 at 5.) Finally, they point out that Mr. Ponce "is already placed in the Antelope building, the maximum-security building at USCF." (Id. at 8.)

Rule 65 of the Federal Rules of Civil Procedure grants the court authority to issue a temporary restraining order or preliminary injunction. "A temporary restraining order and preliminary injunction share the same standard." Nunez v. Nunez, No. 1:13-cv-126-TS, 2013 WL 5230614, at *2 (D. Utah Sept. 12, 2013) (citation omitted). A plaintiff "seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). The likelihood-of-success and irreparable-harm factors are "the most critical" in the analysis. Nken v. Holder, 556 U.S. 418, 434 (2009).

At this time, the court finds that Mr. Ponce has not carried his burden to show either that he is likely to succeed on the merits or that he faces irreparable harm. Based on the Defendants' assertions, the court finds that there are no current plans to move Mr. Ponce to another facility. And because Mr. Ponce is already housed in a maximum-security building, the court finds that the Defendants have already taken steps to ensure Mr. Ponce's safety. Having carefully considered the investigative report provided by the Defendants,[5] the court finds insufficient

---

[5] Mr. Ponce has notified the court that he did not receive a copy of this investigative report or the accompanying initial incident report. (ECF No. 82.) The Defendants have now provided Mr. Ponce with a redacted version of the initial incident report but argue that Mr. Ponce "has no reasonable way to ensure the safety" of the investigative report. (Defs.' Mot. Seal, ECF No. 84 at 3 n.3.) These documents were provided to the court in response to Mr. Ponce's request for extraordinary and expedited relief in the form of a TRO and preliminary injunction. The court

evidence that the February 5, 2025 assault was directed or coordinated by prison officials. The court therefore finds no reason to suspect that Mr. Ponce is at imminent risk of additional assaults. The court may reconsider its ruling if there are new attacks.

To the extent that Mr. Ponce moves the court for an order to show cause why the court should not issue a TRO (see ECF No. 71), the court notes that the Defendants have already filed responses to Mr. Ponce's TRO requests in accordance with the court's previous order. (See Order, Feb. 24, 2025, ECF No. 73.) The court therefore finds that this aspect of Mr. Ponce's motion is moot.

**II. Motion for Emergency Hearing and to Appoint Special Master (ECF No. 67)**

Mr. Ponce moves for an emergency hearing and the appointment of a special master, arguing that prison officials have blocked him from documenting evidence concerning the alleged violations of his constitutional rights. But as the court held in a previous order (see Order, July 17, 2024, ECF No. 20), Mr. Ponce should document the alleged abuses and file that information with the court after the Defendants have produced a Martinez report.[6] The court will then consider whether an evidentiary hearing is necessary. Accordingly, the court denies the motion for an emergency hearing without prejudice.

**III. Motions for Leave to File Supplemental Pleadings (ECF Nos. 48, 60, 79, 86)**

Mr. Ponce moves the court for leave to file supplemental pleadings that would add claims related to additional incidents of mail theft, retaliation, the February 5, 2025 assault, and an alleged incident of retaliation and physical violence on February 26, 2025. (See ECF Nos. 48,

---

agrees with the Defendants that security concerns outweigh Mr. Ponce's interest in receiving a copy of the investigative report and will not order the delivery of that report at this time.

[6] See Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978) (approving the district court practice of ordering prison administrations to prepare reports to be included in the pleadings for cases in which inmates allege constitutional violations by institutional officials).

60, 80, & 86.) Mr. Ponce has filed these requests every one to two months, including after the court instructed him that the parties need not file additional documents until the court resolved the outstanding TRO motions. (See Order, Feb. 24, 2025, ECF No. 73.) Litigation is a chance to resolve the merits of the specific claims made in a plaintiff's complaint. The court is generally reluctant to allow a plaintiff to amend their complaint to include claims about entirely new incidents, as such amendments delay the resolution of the original claims. Mr. Ponce is proceeding pro se, and courts have given pro se litigants wide latitude in complying with court rules and procedures. See Whitney v. New Mexico, 113 F.3d 1170, 1173 (10th Cir. 1997). Nevertheless, the Tenth Circuit has cautioned that pro se litigants must still follow the same rules of procedure that govern other litigants. Nielsen v. Price, 17 F.3d 1276, 1277 (10th Cir. 1994).

Even so, Rule 15 of the Federal Rules of Civil Procedure states: "The court should freely give leave [to amend] when justice so requires." Here, the litigation was commenced less than a year ago, Mr. Ponce seeks to add only a few new defendants (including the current warden of the USCF), and his new claims are related to his original claims. Accordingly, the court grants Mr. Ponce leave to file his new claims.

But the court also imposes several restrictions. First, Mr. Ponce must file a new document, titled the Second Amended Complaint, that includes all the claims he wishes to prosecute. It is too confusing for the court and the Defendants to rely on his First Amended Complaint in conjunction with four supplemental pleadings. It is also unclear which claims Mr. Ponce wishes to pursue against Mr. Mortensen, given that Mr. Mortensen is no longer the warden of the USCF. The court allows Mr. Ponce 60 days from the date of this order to file his Second Amended Complaint.

Second, the court dismisses Defendants Benson and Peralta from this action. Mr. Ponce has filed a separate action, Ponce v. Benson, No. 4:23-cv-116, in which these defendants are also named. Mr. Ponce may not split his claims against these two defendants between lawsuits. In addition, the claims against Defendants Benson and Peralta relate to Mr. Ponce's incarceration at Purgatory Correctional Facility, which is the subject of Mr. Ponce's other lawsuit. Mr. Ponce must restrict his claims in this lawsuit to incidents that occurred while he was incarcerated at the USCF.

Third, Mr. Ponce may only include claims that he has previously included in his First Amended Complaint or his motions for supplemental pleadings. To facilitate this requirement, the court directs the Clerk of Court to provide Mr. Ponce with copies of these filings.

Fourth, Mr. Ponce must use the blank-form civil rights complaint provided along with this order. The court will accept an additional 30 pages in addition to that form, but no more. After all, Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief …." Fed. R. Civ. P. 8 (emphasis added).

Fifth, the court grants Mr. Ponce's motion to substitute the current warden of the UCSF, Sharon D'Amico, as a defendant. (ECF No. 80.)

Finally, other than his Second Amended Complaint, the court will not consider additional filings from Mr. Ponce at this time except in extraordinary circumstances (such as because he is the victim of another assault). The court directs the Clerk of Court to lodge any documents besides the Second Amended Complaint and notes that the Defendants need not respond to any filings unless otherwise ordered by the court.

### IV. Motion for Order against Counsel for the Defendants (ECF No. 34)

Mr. Ponce moves for an order directing counsel for Defendants Benson and Peralta to mark all mail as "legal mail." (ECF No. 34.) Mr. Ponce claims that his mail has been mislaid or misdelivered. (Id.) Marking mail in this way requires correctional officers to open the mail in Mr. Ponce's presence. (See Defs.' Resp., ECF No. 35 at 2.) Although the court finds no legal requirement that the Defendants' counsel must mark mail in this way, the court notes that the court itself labels mail that it sends to the prison as "legal mail." But the court finds no evidence on this record that Mr. Ponce has faced persistent difficulties receiving his mail. In any event, the motion is only directed at counsel for the law firm that represents Defendants Benson and Peralta. (See ECF No. 34.) Having dismissed those defendants, Mr. Ponce's motion for an order directed at their counsel is moot.

### V. Motion for Protective Order (ECF No. 16)

Mr. Ponce's motion for a protective order under 18 U.S.C. § 1512(a)(2) against former Warden Mortensen (ECF No. 16) is also moot now that Mr. Mortensen is no longer the warden at the USCF. In any event, the court notes that Mr. Ponce improperly invokes a criminal code in his motion, which is not permissible. See Higgins v. Neal, No. 94-1154, 1995 WL 216920, at *1 (10th Cir. 1995) ("[C]ourts universally endorse the principle that private citizens cannot prosecute criminal actions."). Additionally, Mr. Ponce's motion mostly seeks to enjoin the former warden from acting unlawfully, and Mr. Mortensen and other prison officials are already under a duty to act lawfully. The court therefore finds that Mr. Ponce's motion is moot.

### VI. Motion for Order against Warden Mortensen (ECF No. 33)

Similarly, Mr. Ponce's motion for an order against former Warden Mortensen (ECF No. 33) is moot. Mr. Ponce seeks an order directing the warden to supply Mr. Ponce with

writing paper and envelopes. (Id.) To the extent this motion is also directed against any other of the Defendants, the court denies this motion without prejudice. Although the prison admits that it did, in fact, experience a shortage of mailing supplies, the prison asserts that the error has been corrected. (Defs.' Resp., ECF No. 37 at 2.) The court does not find at this time sufficient evidence to support Mr. Ponce's claim that he has been denied writing materials. Mr. Ponce has regularly filed documents with the court for the past several months.

### VII. Motion for Hearing re: Motion for TRO (ECF No. 83)

Having decided Mr. Ponce's TRO motions, his request for a hearing on these motions is moot.

### VIII. Motion for Order to Show Cause (ECF No. 69)

Mr. Ponce moves the court to direct the Defendants to show cause why he is being refused access to the law library at the prison. The court denies the motion without prejudice. Mr. Ponce may address this issue in his Second Amended Complaint. See Lewis v. Casey, 518 U.S. 343, 356 (1996) (requiring that prisoners be given "adequate law libraries or adequate assistance from persons trained in the law" (citation omitted)).

### IX. Motions for Extensions or Stays (ECF Nos. 51, 64, 70, 81)

Mr. Ponce has filed several motions asking for extensions or a stay of this action while he exhausts his administrative remedies for claims related to the February 5, 2025 assault. The court will allow Mr. Ponce 60 days to file his Second Amended Complaint, thereby rendering moot his requested extensions. The court finds no reason to place a stay on the case at this time and will lift the partial stay.

### X. Motion for a Copy of the Docket (ECF No. 50)

Mr. Ponce moves for a copy of the docket. The court mailed Mr. Ponce a copy of the docket on January 2, 2025 (see ECF No. 61), thereby rendering this request moot. Nevertheless, the court will order the Clerk of Court to mail another copy to reflect the most recent docket.

### XI. Motion to Submit (ECF No. 46)

Having decided all pending motions in this order, Mr. Ponce's motion to submit is now moot.

### XII. General Considerations for Filing an Amended Complaint

The court has previously provided Mr. Ponce with guidance about filing an amended complaint. (See Order, June 7, 2024, ECF No. 11.) The court repeats the following general points Mr. Ponce should consider before filing his Second Amended Complaint:

(i) The revised complaint must stand entirely on its own and shall not refer to, or incorporate by reference, any portion of the original complaint. See Murray v. Archambo, 132 F.3d 609, 612 (10th Cir. 1998) (stating amended complaint supersedes original). The amended complaint may not be added to after it is filed without moving for amendment. Fed. R. Civ. P. 15.

(ii) Each defendant must be named in the complaint's caption, listed in the section of the complaint setting forth names of each defendant, and affirmatively linked to applicable claims within the "cause of action" section of the complaint.

(iii) The complaint must clearly state what each individual defendant—typically, a named government employee—did to violate Mr. Ponce's civil rights. See Bennett v. Passic, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (stating personal participation of each named defendant is an essential allegation in a civil rights action). "To state a claim, a complaint must 'make clear

12

exactly <u>who</u> is alleged to have done <u>what</u> to <u>whom</u>.'" <u>Stone v. Albert</u>, 338 F. App'x 757, 759 (10th Cir. 2009) (quoting <u>Robbins v. Oklahoma</u>, 519 F.3d 1242, 1250 (10th Cir. 2008)). Mr. Ponce should also include, as much as possible, specific dates or at least estimates of when alleged constitutional violations occurred.

(iv) Each cause of action, together with the facts and citations that directly support it, should be stated separately. Mr. Ponce should be as brief as possible while still using enough words to fully explain the "who," "what," "where," "when," and "why" of each claim. <u>Robbins</u>, 519 F.3d at 1248 ("The [<u>Bell Atlantic Corp. v.</u>] <u>Twombly</u> Court was particularly critical of complaints that 'mentioned no specific, time, place, or person involved in the alleged [claim].' [550 U.S. 544, 565] n.10 (2007). Given such a complaint, 'a defendant seeking to respond to plaintiffs' conclusory allegations … would have little idea where to begin.' <u>Id.</u>").

(v) Mr. Ponce may not name an individual as a defendant based solely on that individual's supervisory position. <u>See</u> <u>Mitchell v. Maynard</u>, 80 F.3d 1433, 1441 (10th Cir. 1996) (stating that supervisory status alone does not support § 1983 liability).

(vi) The bare denial of a grievance, "by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." <u>Gallagher v. Shelton</u>, 587 F.3d 1063, 1069 (10th Cir. 2009).

(vii) "No action shall be brought with respect to prison conditions under [Federal law] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). But Mr. Ponce need not include grievance details in his complaint. Failure to exhaust administrative remedies is an affirmative defense that must be raised by the Defendants. <u>Jones v. Bock</u>, 549 U.S. 199, 216 (2007).

### A. Respondeat Superior

In asserting a § 1983 claim against a government agent in their individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Consequently, there is no respondeat superior liability under § 1983. See id. at 676 ("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997). Entities may not be held liable on the sole ground of an employer-employee relationship with a claimed tortfeasor. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 689 (1978). Supervisors are considered liable for their own unconstitutional or illegal policies only, and not for employees' tortious acts. See Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998).

### B. Affirmative Link

A plaintiff who brings a constitutional claim under § 1983 cannot obtain relief without first satisfying the personal participation requirement:

> That is, the plaintiff must demonstrate the defendant "personally participated in the alleged constitutional violation" at issue. [Vasquez v. Davis, 882 F.3d 1270, 1275 (10th Cir. 2018).] Indeed, because § 1983 is a "vehicle[] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants." Pahls v. Thomas, 718 F.3d 1210, 1225 (10th Cir. 2013); see also Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008) (explaining that when plaintiff brings § 1983 claims against multiple defendants "it is particularly important … that the complaint make clear exactly who is alleged to have done what to whom"); Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 532–33 (10th Cir. 1998)) (holding that district court's analysis of plaintiff's § 1983 claims was "infirm" where district court "lump[ed]" together plaintiff's claims against multiple defendants—"despite the fact that each of the defendants had different powers and duties and took different actions with respect to [plaintiff]"—and "wholly failed to identify specific actions taken by particular defendants that could form the basis of [a constitutional] claim").

Estate of Roemer v. Johnson, 764 F. App'x 784, 790–91 (10th Cir. 2019) (footnote omitted).

"A plaintiff's failure to satisfy this requirement will trigger swift and certain dismissal." Id. at 790 n.5. Indeed, the Tenth Circuit has "gone so far as to suggest that failure to satisfy the personal-participation requirement will not only justify dismissal for failure to state a claim; it will render the plaintiff's claim frivolous." Id.

### C. Inadequate Physical Treatment

The pleading standards governing such claims are as follows:

> Prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994). An inmate raising an Eighth Amendment conditions-of-confinement claim must prove both an objective and subjective component associated with the deficiency. Id. at 834. The objective component requires conditions sufficiently serious so as to (1) deprive an inmate "of the minimal civilized measure of life's necessities" or (2) subject an inmate to "a substantial risk of serious harm." Shannon v. Graves, 257 F.3d 1164, 1168 (10th Cir. 2001) (quotation omitted). "The subjective component requires that a defendant prison official have a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety." Id. To prove deliberate indifference, a prisoner must adduce sufficient facts to show the defendant knew of and disregarded "an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Under this standard, "the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. This high standard for imposing personal liability on prison officials (i.e., the same standard of subjective recklessness used in the criminal law) is necessary to ensure that only those prison officials that inflict punishment are liable for violating the dictates of the Eighth Amendment. Id. at 835–45; see also Self v. Crum, 439 F.3d 1227, 1232 (10th Cir. 2006) (holding that Farmer's "subjective component is not satisfied … absent an extraordinary degree of neglect"); Giron v. Corr. Corp. of Am., 191 F.3d 1281, 1286 (10th Cir. 1999) (recognizing that Farmer's deliberate indifference standard sets out a "stringent standard of fault").

Brooks v. Colo. Dep't of Corr., 12 F.4th 1160, 1173 (10th Cir. 2021).

### D. Retaliation Claim

To properly assert a retaliation claim, Mr. Ponce must allege three elements: (1) he was involved in "constitutionally protected activity"; (2) the Defendants' behavior injured him in a way that "would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) the Defendants' injurious behavior was "substantially motivated" as a reaction to his constitutionally protected conduct. Shero v. City of Grove, 510 F.3d 1196, 1203 (10th Cir. 2007).

### E. Failure to Protect

The pleading standards governing this type of claim are as follows:

> The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement, including "reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotations omitted). This obligation includes a duty "to protect prisoners from violence at the hands of other prisoners." Id. at 833 (quotations omitted). "To prevail on a failure to protect claim, an inmate must show (1) that the conditions of his incarceration present[ed] an objective substantial risk of serious harm and (2) prison officials had subjective knowledge of the risk of harm." Requena v. Roberts, 893 F.3d 1195, 1214 (10th Cir. 2018) (quotations omitted). To satisfy the second prong, the inmate must show that the prison official was deliberately indifferent to the inmate's health or safety. Farmer, 511 U.S. at 834. A prison official will not be liable unless he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Pittman v. Kahn, No. 23-1153, 2024 WL 507476, at *2 (10th Cir. Feb. 9, 2024).

## ORDER

For the foregoing reasons, the court now ORDERS as follows:

1. The court GRANTS Mr. Ponce's Motions for Leave to File Supplemental Pleadings (ECF Nos. 48, 60, 79, & 86) as follows: Mr. Ponce may file a Second Amended Complaint within 60 days from the date of this order.

2. The Clerk of Court shall mail Mr. Ponce the Pro Se Litigant Guide with a blank civil rights complaint form, which Mr. Ponce must use if he wishes to purse his potential claims further. Mr. Ponce may attach no more than 30 additional pages to this form. The court also directs the Clerk of Court to mail Mr. Ponce a copy of the docket in this case.

3. The Second Amended Complaint must not contain any allegations outside the claims and events contained in the First Amended Complaint and Mr. Ponce's Motions for Leave to File Supplemental Pleadings. The court directs the Clerk of Court to send Mr. Ponce a copy of the following documents: ECF Nos. 17, 48, 60, 79, and 86.

4. The court GRANTS Mr. Ponce's motion to add the current warden of the Utah State Correctional Facility as a defendant. (ECF No. 80.) He may list the current warden as a defendant in his Second Amended Complaint.

5. The court DENIES without prejudice Mr. Ponce's motions for a temporary restraining order (ECF No. 66 & 71).

6. The court DENIES without prejudice Mr. Ponce's motion for an emergency evidentiary hearing and his motion to appoint a special master (ECF No. 67).

7. The court DENIES WITHOUT PREJUDICE Mr. Ponce's motion for an order to show cause (ECF No. 69).

8. The court DENIES Mr. Ponce's motion for copies of the Defendants' exhibits. (ECF No. 82.)

9. The court TERMINATES AS MOOT the remaining pending motions. (ECF Nos. 16, 33, 34, 46, 50, 51, 64, 70, 81, 83.)

10. The court lifts the partial stay on this case but notes that the Defendants need not file any answer until the court has screened the Second Amended Complaint and determined whether service of process is warranted.

11. The court directs the Clerk of Court to lodge any documents sent by Mr. Ponce other than the Second Amended Complaint. The Defendants need not respond to any filings unless specifically ordered by the court.

12. Mr. Ponce must observe this District of Utah local rule: "A party proceeding without an attorney (unrepresented party or pro se party) is obligated to comply with: (1) the Federal Rules of Civil Procedure; (2) these Local Rules of Practice; (3) the Utah Standards of Professionalism and Civility; and (4) other laws and rules relevant to the action." DUCivR 83-1.6(a).

13. The court DISMISSES all claims against Defendants Trevor Benson and Carlos Peralta.

14. There is no valid complaint on file as of this order.

DATED this 28th day of March, 2025.

BY THE COURT:

*Tena Campbell*
Tena Campbell
United States District Judge